**In re Daniel KING, Debtor.**

**Lisa M. Hoag–Beasley, Plaintiff,**

**v.**

**Daniel King, Defendant.**

**Bankruptcy No. 99–14755.**

**Adversary No. 99–1385.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 3, 2000.

James G. Meimaris, Cleveland, Ohio, for plaintiff.

Jeffrey F. Slavin, Cleveland, Ohio, for defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Plaintiff, Lisa M. Hogue–Beasley (Beasley) filed the above-styled adversary proceeding to have the Court determine whether a certain divorce judgment debt of her former husband, Daniel King (the Debtor), is dischargeable in his bankruptcy case under provisions of 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(6) and 523(a)(15).

Following a trial proceeding and an examination of the record, generally, judgment is hereby rendered in favor of the Plaintiff Beasley.

*

Beasley and the Debtor were married on June 16, 1996. No issue was born to their marriage; however, Beasley is the mother of three minor children. The parties lived together as a married couple for eight months prior to their separation which ended in divorce on February 4, 1999.

The divorce action was filed by the Debtor. As opposed to a fully adjudicated divorce proceeding with specific findings being made by the domestic relations court, the parties executed a separation agreement (the Agreement) (Exh. 1). In pertinent part, the Agreement provides that the Debtor "... shall pay to Defendant [Beasley] the sum of Nine Thousand Five Hundred Dollars ($9,500.00) which sum shall be paid within 60 days. However, he must immediately apply for 401(K) distribution and shall pay as soon as payment is made." (Exh. B–3). Both parties were represented by separate legal counsel throughout the divorce proceeding.

* *

Under either of the above-referenced provisions, the Court must determine whether the Debtor has committed inappropriate conduct which would render the subject debt nondischargeable.

Plaintiff Beasley contends that the Debtor represented that he had the ability to obtain the $9,500.00 from his 401(K) and that he would immediately do so and would give it to her within sixty days following the execution of their Agreement. His failure to do so, she contends, reflected his intent to deceive her and constituted fraudulent conduct.

The Debtor contends, however, that the $9,500.00 represents a property settlement; that he voluntarily contributed substantial monetary contributions to Beasley which paid off her delinquent tax obligations ($1,900.00); voluntarily offered her a $13,000.00 qualified domestic relations Order (Q.D.R.O.) periodic payment in lieu of the $9,500.00; voluntarily paid certain of her moving expenses from the marital resi-

dence, in addition to other voluntary support. Finally, the Debtor contends that although he intended to pay Beasley the $9,500.00 cash payment, he discovered he was unable to obtain the distribution from his 401(K).

Under §§ 523(a)(2)(A) and (B), (a)(6), and (a)(15), the following is noted in pertinent part:

§ 523. Exceptions to discharge.

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . ."

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

\* \* \*

■ In dischargeability actions, generally, the burden of proof is upon the complainant. *See, Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this instance, Beasley is obliged to prove by a preponderance of the evidence that the $9,500.00 obligation is nondischargeable.

*Petition and Schedules*

The Debtor filed his voluntary petition for relief under Chapter 7 on June 18, 1999. Total liabilities were reported in the amount of $54,134.92, inclusive of secured, priority, and nonpriority unsecured claims. The latter category included the $9,500.00 Agreement obligation. Total assets were stated in the amount of $71,870.00. Factoring exempt assets, the case trustee ultimately reported the case to be a "no-asset" case for administrative purposes.[1] The Debtor reported ownership of no real property.

His net monthly income was reported to be $1,841.00. (Schedule I), against monthly reported expenses of $1,810.00 (Schedule J). The reported monthly transportation costs ($215.00), clothing costs ($75.00), non-descript IRS payment ($75.00), and the $204.00 monthly expense for "Ed. Ln, cell phone, bank fee" appear to be unreasonably excessive.

*Trial Testimony*

Plaintiff Beasley resides in Cleveland, Ohio with her three children in her mother's home. Prior to her marriage to the Debtor, she derived her income as a child care provider in her home. Following their marriage, at the reported insistence of the Debtor to want to solely provide for his family and his desire that a day care business not operate in their home, Beas-

1. See, Summary of Schedules and Schedule C.

ley eventually curtailed such business operation. At its peak, she had annual earnings of $40,000.00 from her day care business. (Beasley, Direct). Interestingly, this reported income occurred at a time when she was residing in a government subsidized rental dwelling with her three children. Upon their marriage to each other, the Debtor moved into this residence with Beasley and her children.

Following their divorce, had she received a cash settlement from the Debtor, Beasley intended to move into an apartment dwelling and resume her day care business as a child care provider. (Id.) At the time of their divorce, Beasley reported earnings of $12,000.00 from her employment at a nursing home, while residing in the marital residence. Eventually, she was evicted from the marital residence due to financial difficulty.

Beasley acknowledged her desire for a settlement of the divorce proceeding, as opposed to full adjudication, due to mounting legal expenses and her imminent need for cash to pay her obligations. She also acknowledged the Debtor's offer to pay her a $13,570.00 Q.D.R.O. which would come directly from his 401(K) to her, in lieu of the agreed upon $9,500.00 cash settlement. (See, Exh. P–3). Through her counsel, the Debtor's Q.D.R.O. offer was rejected, as it was not the earlier agreed upon cash settlement stated in the Agreement. (See, Exh. P–4). Notwithstanding the Debtor's earlier agreement to pay a $9,500.00 cash offer and his subsequent offer of a $13,570.00 Q.D.R.O. and her rejection of same, Beasley was aware that the Debtor's attempt to obtain a distribution from his 401(K) was actually made by him to no avail. Her own exhibit (P–5) is a letter dated March 16, 1999 from the Debtor's 401(K) plan administrator denying his request for a distribution to accommodate the $9,500.00 cash settlement. That denial was clearly premised on the Debtor's failure to provide the 401(K) plan administrator with a court-ordered Q.D.R.O. (Id.). The subject settlement Agreement, Exhibit B–3, 4 and 5, was signed by the parties but was undated. As such, whether the Debtor made the required request within the agreed upon sixty-day period is imprecise; however, it does reflect an attempt on his part to fulfill his obligation under the Agreement. In pertinent part, the Agreement required of Debtor the following:

The parties agree that Plaintiff, Daniel King, shall pay to defendant Lisa King Beasley the sum of Nine thousand five hundred dollars ($9,500) which sum shall be paid within 60 days. However, he must immediately apply for 401(K) distribution and shall pay as soon as payment is made. (Exhibit B–3).

■ Undisputedly, the Agreement was executed by the parties and was also signed by their respective legal counsel. The closest reading of the above-quoted language indicates in no manner that the agreed upon payment was to have been a lump sum cash payment. It was only to come from the Debtor's 401(K) plan. Unrefutedly, the Debtor applied for the distribution which was rejected. In light of the circumstances, that rejection was unreasonable. The Debtor's offer of a $13,-570.00 Q.D.R.O. which would accommodate the $9,500.00 agreed upon figure, after taxes, was rejected by Beasley as she wanted a cash payment. Simply stated, the terms of the Agreement do not support or require a cash payment as Beasley contends. Consequently, the conjunctive elements of § 523(a)(2)(A) nor (B) are proven as no fraudulent conduct is found on the part of the Debtor.

■ Under subsection (a)(6) of § 523, a debt is only nondischargeable where there is found to be willful and malicious conduct by a debtor to another entity or to the property of another entity. Herein, it has not been demonstrated by Beasley that she possesses a vested interested in the Debtor's 401(K) plan. As noted above, the burden of proof is upon her to do so in proving nondischargeability. Furthermore, none of the testimony or other evi-

dence adduced is clearly addressable to the elements of § 523(a)(6). Specifically, Beasley has failed to show by a preponderance of the evidence where the Debtor committed any willful and malicious conduct towards herself or against any of her property. To the contrary, the evidence reflects just the opposite. Not only did the Debtor endeavor to meet the terms of the Agreement by offering Beasley a Q.D.R.O. distribution from his 401(K) plan that would net her the agreed upon $9,500.00, he voluntarily gave other financial support to Beasley as noted above. In summary, the Plaintiff Beasley has failed to substantiate an action for nondischargeability under § 523(a)(6) of the Bankruptcy Code.

■ Lastly, the Complaint allegations are considered in view of the provisions of § 523(a)(15) of the Code to determine dischargeability. As noted above, if the subject obligation is incurred by a debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, such an obligation is generally nondischargeable unless:

(A) [T]he debtor does not have the ability to pay such debt from income or property of the debtor ·not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

An application of the standards of subsection (a)(15)(A) and (B) have been considered herein. Neither the Debtor or Beasley have remarried since their divorce. Plaintiff Beasley is a high school graduate. In addition to her former business experience as a child care provider, she is a licensed realtor. She also pursued clerical training but is uncertified in clerical work. Beasley has been a licensed realtor since

1997 and is currently affiliated with a national real estate broker.

Plaintiff Beasley is approximately 32 years of age and has no disabilities (Beasley, Court Inquiry). She and her three minor children, of no relation to the Debtor, reside with her mother. Currently employed as a night desk clerk at a major hotel chain, her annual income approximates $15,000.00 in addition to earnings received as a realtor ($3,000 in 1999). Her employer provides medical insurance coverage.

Defendant–Debtor King, approximately 32 years of age, is also a high school graduate. He has no dependents. For the past thirteen years he has been employed as an equipment service representative for Ohio Business Machines, Inc. He services copy machines in a prescribed region. He is currently pursuing, part-time, an Associate's degree in computer programming since 1998. His annual income is approximately $30,000.00 from his employer, and he has no other income source. He foresees no upward mobility for himself with his current employer. He has no disabilities.

In 1996, while operating a day care business, Beasley's annual income was $40,000.00; $32,000.00 in 1995; and $15,000.00 in 1994. She states that her 1997 tax return has yet to be filed. (Beasley, Court Inquiry). Beasley testified that she intends to resume her day care business once she obtains her own residence. No explanation was offered why this has not been accomplished since her separation from the Debtor in 1997. This is particularly noteworthy since she formerly earned an annual income of $40,000.00 while residing and operating a profitable business in government subsidized housing. That income level does not reflect her current ability to earn income as an active licensed realtor.

The testimony of the Debtor was generally credible. Although he was unsuccessful in his attempt to obtain the requested distribution from his 401(K) plan, he testi-

fied unequivocally that he intended to pay Beasley the $9,500.00 as agreed upon. When asked why he failed to petition the divorce court for a Q.D.R.O. as required by his 401(K) administrator, he stated that it would have been to no avail as Beasley had earlier rejected his offer of a Q.D.R.O. He was also aware that, notwithstanding his failed 401(K) distribution attempt, he could have applied for a loan in order to pay the agreed upon $9,500.00. (Debtor, Cross–Exam). He never applied for a loan to address this obligation due to the $41,000.00 of consumer debt (Exh. B–6) he was obligated to pay following the divorce (Debtor, Court Inquiry). His pending Chapter 7 discharge, however, has freed him of most of those obligations.

### Conclusion

Upon consideration of the above factual findings, including the relative present and future earning potential of both parties, their respective ages, dependent obligations, their lack of disabilities, their employability, their actual employment status, the terms to which they had agreed and intended to perform under the Agreement, and the finding of overstated monthly expenses in the Debtor's budget, it is hereby determined that the exceptional provisions of subsections (A) and (B) of § 523(a)(15) are not applicable. Thusly, the subject obligation ($9,500.00) is hereby determined to be nondischargeable.

IT IS SO ORDERED.